|   |   |
|---|---|
| JUSTIN GREEN, individually and doing business as GREEN SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF YUBA; JEREMY STRANG, individually and in his official capacity; JOHN JACENICH, individually and in his official capacity; MELANIE MARQUEZ, individually and in her official capacity; and DOES 1-10 inclusive,<br><br>Defendants. | No. 2:18-cv-02234-JAM-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

This case arises from the abatement of an alleged public nuisance related to unpermitted structures and marijuana cultivation on property owned by Justin Green ("Mr. Green" or "Plaintiff"). First Amended Compl. ("FAC"), ECF No. 7. Mr. Green sued Yuba County (the "County") and several Yuba County employees (collectively, "Defendants") alleging the unlawful seizure and destruction of property in violation of California tort law and his constitutional rights. Id. Defendants move to dismiss the First Amended Complaint. Mot., ECF No. 9-1.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.[1]

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff Justin Green is the owner of property located at 13598 Musholt Road, Dobbins, CA, in Yuba County (the "Property"). FAC ¶ 3. During the summer of 2017, Mr. Green leased the Property to residential tenants, who began cultivating marijuana on the premises. Id. ¶ 13.

Mr. Green alleges that on August 14, 2017, after receiving reports of marijuana cultivation on the Property, Yuba County Code Enforcement officials inspected the Property without Mr. Green or any resident present. FAC ¶ 14. Following the inspection, a Notice and Order to Abate Public Nuisance and Administrative Order to Appear ("Notice to Appear") was posted at the Property and mailed to Mr. Green. Id. ¶ 15. The Notice to Appear listed violations of Yuba County Ordinance Code Sections 7.40.400A, 7.40.400D, and 7.40.400F for (1) outdoor cultivation of marijuana; (2) cultivation of more than six marijuana plants; (3) unpermitted structures on the property associated with marijuana cultivation; (4) emplacement of a recreational vehicle as a place of human habitation; and (5) erection of a structure without a permit. FAC ¶ 15; Notice to Appear, ECF No. 7-1, at 2-4. The Notice to Appear required Mr. Green to abate the alleged public nuisance and appear before the Yuba County Board of

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for January 22, 2019.

2

Supervisors on August 22, 2017. FAC ¶ 16; Notice to Appear.

At the Board of Supervisors hearing, County Code Enforcement staff testified and presented evidence regarding the alleged nuisance and Mr. Green testified about his efforts to abate the nuisance. FAC ¶¶ 18-20. Mr. Green alleges County Code Enforcement staff assured him that it would not pursue an abatement action if a follow-up inspection revealed he had removed all marijuana plants from the Property. Id. ¶ 20. After the hearing, the Board of Supervisors issued an order confirming a public nuisance at the Property for violations of County Ordinance Code Sections 7.40.400A, 7.40.400D, and 7.40.400F, requiring Mr. Green to abate the nuisance no later than 5 p.m. on August 23, 2017, and subjecting the Property to further inspection on August 24, 2017. FAC ¶ 21; Board of Supervisors Order, ECF No. 7-1, at 6-7.

Mr. Green alleges he removed all remaining marijuana plants from the Property on August 23, 2017, and thereby was in full compliance with Yuba County Ordinance Code Chapter 7.40. FAC ¶ 22. That same day at 1:30 p.m., County Code Enforcement employee Monaco, upon affidavit, applied for and received a warrant authorizing the inspection for and abatement of any public nuisance at the Property, per the Board of Supervisors Order. FAC ¶ 21; Warrant, ECF No. 7-1, at 9-12.

Mr. Green alleges that on August 24, 2017 he waited at the Property for County Code Enforcement officials to arrive for the re-inspection. FAC ¶ 26. After calling County Code Enforcement, Mr. Green alleges he was told the inspection would not occur that day and would be rescheduled, at which time he left the Property.

| | |
|---|---|
| 1 | Id.  However, County Code Enforcement officials arrived soon |
| 2 | thereafter and inspected the Property, found Yuba County code |
| 3 | violations, and purportedly cured them.  Warrant Execution |
| 4 | Declaration, ECF No. 7-1, at 13-14.  Mr. Green alleges that, |
| 5 | while on the Property, County officials seized and destroyed |
| 6 | property which was in no way related to any prior nuisance notice |
| 7 | or the Board of Supervisors Order, including temporary |
| 8 | greenhouses, generators, a shipping container, and certain |
| 9 | mechanical, electrical, and plumbing equipment.  FAC ¶¶ 30-31. |
| 10 | The two generators are alleged to be associated with Mr. Green's |
| 11 | business, Green Solutions.  Id. ¶ 30. |
| 12 | Mr. Green alleges the County has refused to provide him with |
| 13 | a full list of the seized or destroyed property and information |
| 14 | on how to recover the property, including a post-deprivation |
| 15 | hearing.  FAC ¶¶ 32-33.  On January 17, 2018, Mr. Green submitted |
| 16 | a Claim for Damages to the Yuba County Board of Supervisors as |
| 17 | required by the California Tort Claims act, but his claim was |
| 18 | denied.  FAC ¶¶ 34, 38; Claim for Damages, ECF No. 7-1, at 16-22. |
| 19 | On August 16, 2018, Mr. Green filed this suit to recover for |
| 20 | the alleged damage to and seizure of his property.  Compl., ECF |
| 21 | No. 1.  Defendants moved to dismiss the Complaint.  Initial Mot. |
| 22 | to Dismiss, ECF No. 6-1.  Mr. Green then filed a First Amended |
| 23 | Complaint, bringing causes of action for: (1) violation of the |
| 24 | right to due process; (2) unlawful search and seizure; (3) the |
| 25 | taking of private property without a public purpose or just |
| 26 | compensation; (4) conversion; (5) negligence; (6) intentional |
| 27 | misrepresentation; and (7) negligent misrepresentation.  FAC, ECF |
| 28 | No. 7.  Defendants move to dismiss Mr. Green's First Amended |

Complaint in its entirety. Mot., ECF No. 9-1. Mr. Green opposes the motion. Opp'n, ECF No. 10.

## II. OPINION

### A. Judicial Notice

Defendants ask this Court to take judicial notice of three Yuba County ordinance chapters relevant to this litigation. RJN, ECF No. 9-2, at 1-2. The request is unopposed. And since "[m]unicipal ordinances are proper subjects for judicial notice," Tollis, Inc. v. Cty. of San Diego, 505 F.3d 935, 938 n.1 (9th Cir. 2007), the Court grants the request and takes judicial notice of Yuba County Ordinance Chapters 7.40, 10.05, and 10.20.

### B. Due Process Claim

The Fourteenth Amendment prohibits states from depriving persons of life, liberty, or property, without due process of law. U.S. Const. amend. XIV. Courts must "analyze a procedural due process claim in two steps. The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013).

Mr. Green, conceding that there is no protected property interest in marijuana, claims all marijuana had been removed and the County nevertheless seized or destroyed property including structures, generators, and mechanical, electrical, and plumbing equipment. FAC ¶¶ 30-31; Claim for Damages, ECF No. 7-1, at 16-22. As such, Mr. Green has sufficiently claimed an interference

with protected property interests.

Mr. Green does not seem to dispute, however, that the Notice to Appear and the Board of Supervisors hearing together constitute sufficient pre-deprivation procedures. Opp'n at 14 (acknowledging he availed himself of the available procedures and that the Board of Supervisors ruled correctly). This Court, balancing the requisite factors, agrees. See Vasquez, 734 F.3d, 1044 (discussing the three-factor framework set forth in Mathews v. Eldridge, 424 U.S. 319 (1976)).

Moreover, after the alleged unlawful destruction and seizure of his property, Mr. Green submitted a Claim for Damages to the Board of Supervisors under the California Tort Claims Act, which was denied, and Mr. Green has filed tort claims in the instant action. This Court finds that Mr. Green has been provided adequate post-deprivation procedures. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that, as with a negligent deprivation of property, an unauthorized intentional deprivation of property by a state employee does not violate the Due Process Clause if a meaningful post-deprivation remedy is available); see also Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) ("California Law provides an adequate post-deprivation remedy for any property deprivations.") (citing California Tort Claims Act at Cal. Gov. Code §§ 810-895).

Mr. Green cannot state a claim for a violation of his procedural due process rights and any further attempt to amend is futile. His First Cause of Action is therefore dismissed with prejudice.

///

C. Unreasonable Search and Seizure Claim

Mr. Green contends Defendants violated his Fourth Amendment rights by conducting a search and seizure beyond the scope of the relevant warrant and seizing personal property outside the scope of the Board of Supervisors Order. FAC ¶ 49.

This Court disagrees with Defendants' argument that the Fourth Amendment claim should be dismissed because Plaintiff received a pre-deprivation hearing and has a post-abatement state remedy. Mot. at 9. In the Ninth Circuit, absent a judicial writ or order, entry onto private land to search for and abate suspected or known nuisances falls within the warrant requirement of the Fourth Amendment. Conner v. City of Santa Ana, 897 F.2d 1487, 1490, n.7 (9th Cir. 1990). Thus, the Fourth Amendment's warrant requirement plainly applies here.

As a threshold matter, Mr. Green argues the warrant was invalid and unlawfully obtained given alleged omissions and falsehoods in defendant Monaco's supporting affidavit. Opp'n at 7 (citing Franks v. Delaware, 438 U.S. 154 (1978)). Defendants ask this Court to disregard the judicial deception allegations because they do not appear in the FAC. Reply, ECF No. 11, at 4. But Mr. Green attached the allegedly defective warrant to the FAC and broadly alleged the search and seizure were unreasonable under the Fourth Amendment. FAC ¶¶ 49-50; Warrant, ECF No. 7-1, at 9-12. This Court therefore may consider the argument.

Mr. Green's frustrations regarding the execution of the warrant based on his impressions of the Board of Supervisors hearing, the Order, and his August 24 call with County Code Enforcement are understandable; but this Court finds his legal

7

position to be without merit. The Board of Supervisors concluded nuisances existed at the Property, and ordered County Code Enforcement to abate any nuisance still present at the August 24 inspection, or soon thereafter. ECF No. 7-1 at 6. Thus, it is logical that the warrant was issued at 1:30 p.m. on August 23, prior to Mr. Green's abatement compliance deadline of 5:00 p.m. on August 23. The warrant was valid when issued given the existing nuisance and its execution was anticipatory – it was obtained so an inspection and, as necessary, abatement could occur on August 24 as provided by the Board of Supervisors Order. ECF No. 7-1 at 11 ("Upon the owners [sic] failure to comply with the ORDERS, Yuba County Code Enforcement is ordered to abate the nuisance."). Indeed, the warrant was only executed on August 24, after the time for compliance had run and the nuisance had not been abated. ECF No. 7-1 at 6, 12.

Nor does this Court take issue with the state court's finding that, based on the affidavit, California Code of Civil Procedure Section 1822.56 applied and thus permitted entry of the Property without notice and with force. ECF No. 7-1 at 11; Cal. C.C.P. § 1822.56. Moreover, while defendant Monaco's assertion that such an order was "necessary due to the lack of cooperation of the owner" may be perceived as misleading given Mr. Green's efforts to comply, it was not knowingly and intentionally false in light of Mr. Green's potential absence at the time of the inspection. Even still, that statement was not required for a finding of probable cause, and so Franks does not apply. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

Nevertheless, even with a valid warrant, Mr. Green's

8

allegations, if true, would support a finding that the search and seizure exceeded the scope of the warrant. While the warrant indeed provided the County officials with the authority to abate specific nuisances, Mr. Green alleges some of the property destroyed or seized was in no way related to those nuisances. FAC ¶¶ 30-31. It is not a hyper-technical reading of a warrant to find that a search or seizure of property wholly unrelated to the warrant exceeds its scope. See Maryland v. Garrison, 480 U.S. 79, 84 (1987).

Defendants' motion to dismiss Mr. Green's Second Cause of Action for a violation of the Fourth Amendment is denied.

D.  Takings Claim

The Fifth Amendment of the United States Constitution provides, in relevant part, "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. The Takings Clause applies to the states through the Fourteenth Amendment. See, e.g., Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 175, n.1 (1985) ("Williamson County").

The Takings Clause is not implicated when the government exercises its police power, including in the abatement of a public nuisance. Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 492, n.22 (1987). Here, however, Mr. Green alleges the property seized or destroyed by the County employees was unrelated to a public nuisance, and accepting those allegations as true, Mr. Green's claim survives this motion.

Defendants also argue Mr. Green's takings claim is unripe. Mot. at 7 (citing Williamson County). The Ninth Circuit applies

a modified Williamson County analysis in cases of physical takings whereby a takings claim is not ripe until the property owner has attempted to obtain just compensation through the procedures provided by the state, and been denied. See Daniel v. Cty. of Santa Barbara, 288 F.3d 375, 382 (9th Cir. 2002) (discussing Williamson County ripeness inquiry). Mr. Green alleges, and presents evidence that, he sought compensation for the purported taking by filing a Claim for Damages with the Yuba County Board of Supervisors, which was denied. FAC ¶¶ 34, 38; Claim for Damages, ECF No. 7-1, at 16-22. The takings claim is therefore ripe.

Defendants' motion to dismiss Mr. Green's Third Cause of Action for a violation of the Takings Clause is denied.

E. *Monell* Claims

Mr. Green names the County as a defendant in each of his constitutional rights claims under 42 USC § 1983. A municipality may be held liable under Section 1983 for constitutional injuries inflicted through a municipal policy or custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). To establish municipal liability under Section 1983, a plaintiff must show that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to a deliberate indifference to his constitutional right; and (4) the policy was the moving force behind the constitutional violation. Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (internal citations and quotations omitted). To properly state a Monell claim, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient

10

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In the FAC, Mr. Green lists a series of alleged customs, policies, or practices which violated his constitutional rights. FAC ¶ 36. But these alleged customs, policies, or practices merely repeat the base allegations of which Mr. Green himself complains. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). That is, the custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" policy. Monell, 436 U.S., at 691. Mr. Green does not raise any specific instances of similar conduct, but instead, on information and belief, alleges there have been dozens of similar types of nuisance and abatement actions with similar legal violations since summer of 2017. FAC ¶ 35. This is insufficient to state a claim for the existence of a policy, custom, or practice.

This Court dismisses the Monell claims but grants Mr. Green leave to amend his complaint with respect to these claims. Fed. R. Civ. P. 15(a) ("[T]he court should freely give leave [to amend] when justice so requires.").

F. State Tort Claims

Mr. Green brings claims for negligence, conversion, intentional misrepresentation, and negligent misrepresentation

under California law ("state tort claims"). Defendants contend the claims are barred by applicable California statutory immunities. Mot. 12-14.

1. Statutory Immunity

California public entities, including counties, are not subject to common law tort liability; liability may only be found pursuant to statute. Cal. Gov. Code § 815 ("Except as otherwise provided by statute: a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."). Acknowledging this bar, Mr. Green asserts his state tort claims against the County on a theory of vicarious liability. Cal. Gov. Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee."). Defendants counter that the County employees are statutorily immune from these claims under California Government Code Sections 818.6, 820.2, 820.4, 821.4, 821.6, and 821.8. Mot. at 12-14. Defendants concede that California Government Code Section 822.2 is not applicable. Reply at 5.

a. California Government Code Section 820.2

Section 820.2 generally affords a public employee personal immunity from suit when the act or omission for which recovery is sought resulted from "the exercise of the discretion vested" in the employee. Cal. Gov. Code § 820.2. However, protected discretionary functions are limited to those that involve policy

decisions, rather than ministerial or operational functions of government. Caldwell v. Montoya, 10 Cal. 4th 972, 981-982 (Cal. 1995). A state employee's alleged decision to seize property beyond the scope of a warrant is not a basic policy decision, but rather an operational decision by the employee purporting to apply the law. Thus, Section 820.2 immunity does not attach here.

b. California Government Code Section 820.4

Section 820.4 provides a public employee with immunity for any act or omission, done while exercising due care, in the execution or enforcement of any law. Cal. Gov. Code § 820.4. Logically, the exercise of due care required by this provision presupposes the employee was not negligent or acting in an intentionally injurious manner. Thus, Section 820.4 is redundant of denials of the allegations of the claims, since immunity would not attach until the claims are adjudicated in Defendants' favor. See Neylon v. Cty. of Inyo, No. 1:16-CV-0712-AWI-JLT, 2017 WL 3670925, at *11-12 (E.D. Cal. Aug. 25, 2017). At this stage of the litigation, this provision does not bar any of the state tort claims.

c. California Government Code Sections 818.6 and 821.4

Section 818.6 provides "A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its property . . . for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." Cal. Gov.

13

Code § 818.6. Section 821.4 extends the same immunity to any "public employee." Cal. Gov. Code § 821.4. Here, Mr. Green's Fifth Cause of Action, that Defendants "were negligent in inspecting" the Property, falls squarely within these statutes.

However, Sections 818.6 and 821.4 do not immunize "negligent acts or omissions that happen to occur while the inspection is taking place, but which do not affect the results or goals of the inspection itself." Allen v. Cty. of Lake, No. 14-CV-03934-TEH, 2017 WL 363209, at *9-10 (N.D. Cal. Jan. 25, 2017) (quoting Cochran v. Herzog Engraving Co., 155 Cal. App. 3d 405, 412 (Cal. Ct. App. 1984)). Thus, Sections 818.6 and 821.4 do not bar Mr. Green's other state tort claims.

                d.   California Government Code Section 821.6

Section 821.6 provides that "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The Ninth Circuit recently held Section 821.6 is limited to malicious prosecution claims, and rejected the California intermediate appellate courts' expansion of the immunity to investigative steps taken prior to a judicial proceeding, including actions by police officers. Mendez v. Cty. of Los Angeles, 897 F.3d 1067, 1083 (9th Cir. 2018); Sharp v. Cty. of Orange, 871 F.3d 901, 920-21 (9th Cir. 2017). Because the County employees' actions here took place after the administrative proceeding had been completed, and because this claim does not relate to a malicious prosecution, Section 821.6 does not bar Mr. Green's state tort claims.

e.  California Government Code Section 821.8

Section 821.8 provides "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." Cal. Gov. Code § 821.8. While this provision would bar liability for trespass, for example, because the warrant authorized *entry* onto the Property, this immunity provision does not bar Mr. Green's state tort claim for conversion of property which was not within the scope of the warrant. See Ogborn v. City of Lancaster, 101 Cal. App. 4th 448, 462 (Cal. Ct. App. 2002).

2. Negligence

For the reasons discussed above, Mr. Green's state tort claim for negligence is dismissed with prejudice. Any further amendment is futile given Defendants' statutory immunity under California Government Code Sections 818.6 and 821.4.

3. Conversion

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. . . Conversion is also a strict liability tort. Therefore, questions of good faith, lack of knowledge and motive are ordinarily immaterial." Oakdale Vill. Grp. v. Fong, 43 Cal. App. 4th 539, 543-44 (Cal. Ct. App. 1996), as modified on denial of reh'g (Apr. 10, 1996). Mr. Green's claim for conversion essentially tracks his claim for a violation of his Fourth Amendment rights, and depends on whether the County employees acted lawfully in seizing

15

his property.  As such, accepting as true the allegations that the seizure exceeded the scope of the warrant, Mr. Green has stated a claim for conversion.

Thus, Defendants' motion to dismiss Mr. Green's Fourth Cause of Action is denied.

### 4. Intentional and Negligent Misrepresentation

Under California law, the elements of intentional misrepresentation are (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages.  See Anderson v. Deloitte & Touche, 56 Cal. App. 4th 1468, 1474 (Cal. Ct. App. 1997).  "Negligent Misrepresentation is the assertion of a false statement, honestly made in the belief it is true, but without reasonable ground for such belief." Anderson, 56 Cal. App. 4th, at 1476.  The essential elements of a claim for negligent misrepresentation are the same as the elements for intentional misrepresentation except it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true.  Id. at 1476-77.

Neither party's briefing specifically addresses these claims, outside the context of statutory immunity.  Mr. Green's misrepresentation claims are based on (1) alleged representations made by members of the Board of Supervisors and County staff that no abatement action would be undertaken if Mr. Green submitted to a re-inspection of the Property, and (2) defendant Monaco's alleged intentional concealment or misrepresentation of critical facts in securing the warrant.  FAC at 13-15.

1    Mr. Green's misrepresentation claims both fail.  First, the
2    Board of Supervisors Order is clear that the public nuisance
3    extended beyond the existence of marijuana plants and that if the
4    nuisance had not been abated by the time of the inspection,
5    County Enforcement officials would abate the remaining nuisance.
6    Board of Supervisors Order, ECF No. 7-1, at 6-7.  Regardless of
7    whether the Board of Supervisors thanked and commended Mr. Green
8    for taking initial corrective action, the allegations do not
9    support that the Board of Supervisors made knowingly false
10   statements with the intent to mislead Mr. Green or made
11   statements without reasonable ground for believing them to be
12   true.  Second, this Court already addressed Mr. Green's
13   allegations with respect to defendant Monaco's affidavit, and
14   finds them insufficient to state a claim for relief under a
15   theory of intentional or negligent misrepresentation.  Because
16   these claims cannot be sustained against any County employee or
17   body, these claims likewise cannot be sustained against the
18   County itself.  Cal. Gov. Code § 815.
19       This Court finds that further amendment of these two claims
20   is futile and therefore dismisses the Sixth and Seventh Causes of
21   Action with prejudice.
22
23                      III.   SANCTIONS
24       This Court issued its Order re Filing Requirements ("Filing
25   Order") on August 16, 2018.  ECF No. 3-2.  The Filing Order
26   limits memoranda in support of and in opposition to motions to
27   dismiss to fifteen pages.  The Filing Order also states that an
28   attorney who exceeds the page limits must pay monetary sanctions

of $50 per page.  Plaintiff's opposition memorandum exceeds the page limit by eight pages.  See Opp'n.  This Court therefore ORDERS Plaintiff's counsel to pay $400 to the Clerk of the Court within five days of the date of this Order.

## IV. ORDER

For the reasons set forth above, this Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (ECF No. 9-1) as follows:

1. GRANTED as to Plaintiff's First, Fifth, Sixth, and Seventh Causes of Action, which are dismissed with prejudice;

2. GRANTED as to Plaintiff's Monell claims against the County, which are dismissed without prejudice; and

3. DENIED as to Plaintiff's Second, Third, and Fourth Causes of Action.

If Plaintiff elects to amend his complaint with respect to the Monell claims, Plaintiff shall file a Second Amended Complaint within twenty days of this Order.  Defendants' responsive pleading is due twenty days thereafter.

IT IS SO ORDERED.

Dated: February 20, 2019

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE