UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN GREEN, individually and doing business as GREEN SOLUTIONS, | No. 2:18-cv-02234-JAM-AC |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| COUNTY OF YUBA; JEREMY STRANG, individually and in his official capacity; JOHN JACENICH, individually and in his official capacity; MELANIE MARQUEZ, individually and in her official capacity; and DOES 1-10 inclusive, | |
| Defendants. | |

This case arises from the abatement of an alleged public nuisance related to unpermitted structures and marijuana cultivation on property owned by Justin Green ("Green" or "Plaintiff"). Second Am. Compl. ("SAC"), ECF No. 14. Green sued Yuba County (the "County") and several Yuba County employees (collectively, "Defendants") alleging the unlawful seizure and destruction of property. Id. Defendants move to dismiss for a second time. Mot., ECF No. 17. For the reasons set forth below,

1    the Court GRANTS Defendants' motion.[1]

2

3         I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

4         A recitation of the factual allegations in this case can be

5    found in a prior order issued by the Court.  See Green v. Cty. of

6    Yuba, No. 2:18-CV-02234-JAM-AC, 2019 WL 827638, at *1-2 (E.D.

7    Cal. Feb. 21, 2019).  The Court will not repeat the factual

8    allegations in this order.

9         In the prior order, the Court dismissed Green's First,

10   Fifth, Sixth, and Seventh Causes of Action and granted him leave

11   to amend his Monell claims against the County.  Id. at *8.  Green

12   then amended his complaint with additional allegations.  See SAC.

13   Defendants now move to dismiss Green's amended Fourth Amendment

14   Monell claim and his reference to suing the individual Defendants

15   in their official capacities.  See Mot.  Green has filed an

16   opposition, Opp'n, ECF No. 18, to which Defendants have replied,

17   Reply, ECF No. 19.

18

19                            II.   OPINION

20        A.   Judicial Notice

21        Defendants ask this Court to take judicial notice of four

22   state court actions and one federal court actions.  RJN, ECF No.

23   17-2.  The SAC references these cases as factual evidence in

24   support of Green's Monell claim.  See SAC at 9-10.  Green does

25   not oppose and joins in the request.  Opp'n at 2.  Accordingly,

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for May 21, 2019.

                                    2

the Court grants Defendants' Request for Judicial Notice of the relevant state and federal court actions.

B. Official Capacity Claims

In his Opposition, Green concedes that it is redundant to name an individual defendant in his or her official capacity while simultaneously suing the public entity. Opp'n at 7. Green, however, also argues that the Court may only dismiss redundant claims like this if the defendant is named only in an official capacity. See id. (citing Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008)). The Court does not agree with Green's contorted reading of Center for Bio-Ethical Reform and will dismiss the official capacity claims as redundant. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Green's individual capacity claims remain.

C. Fourth Amendment Monell Claims

Green names the County as a defendant in each of his constitutional claims. SAC at 10-12. The County moves to dismiss Green's Fourth Amendment Monell claim for failure to allege a municipal custom or practice. Mot. Mem. at 4-5.

Municipalities may be held liable under Section 1983 for constitutional injuries inflicted through a municipal policy or custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). To establish municipal liability under Section 1983, a plaintiff must show that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to a deliberate indifference to his

constitutional right; and (4) the policy was the moving force behind the constitutional violation. Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (internal citations and quotations omitted). To properly state a Monell claim, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In the SAC, Green asserts that the harm he suffered was not an isolated instance for several reasons. SAC at 9. First, he cites to the number of nuisance notices and orders issued by the County (280 between 2015 and 2018), and the number appealed (35). Id. Second, he alleges that 221 of those 280 notices and orders have resulted in executed inspection and abatement warrants and that there have been five post-deprivation hearing since 2015. Id. Third, he asserts that the four state court lawsuits against the County for illegal assessment of fines, penalties, and abatement actions are evidence of a custom, policy, or practice. Id. Finally, he argues that a federal lawsuit against the County related to cleanup of homeless camps further evidences a custom, policy, or practice. Id. at 9–10.

As the Court noted in its prior order, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99

F.3d 911, 918 (9th Cir. 1996), holding modified by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.' " Id. (quoting Monell, 436 U.S. at 691). The Court may infer a custom or practice from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Hunter v. Cty. of Sacramento, 652 F.3d 1225, 1233–34 (9th Cir. 2011) (quoting Nadell v. Las Vegas Metro. Police Dep't, 268 F.3d 924, 929 (9th Cir. 2001)).

      1.  Number of Notices and Orders Between 2015 and 2018

Green first argues that the low rate of appeal and high rate of warrants following abatement orders evinces an illegal custom or practice by the County. SAC at 9. The Court disagrees.

Accepting Green's allegations as true, the County issued 280 abatement notices and orders regarding nuisances under Chapter 7.40 between 2015 and 2018. SAC at 9. Of those 280 notices and orders, 35 were appealed and 221 resulted in executed inspection and abatement warrants. Id. There were five post-deprivation hearings in that time period. Id. These numbers, on their own, are not indicative of any unconstitutional custom or practice.

Attached to the SAC is Green's abatement notice, which states in conspicuous bold text on the final page:

> IMPORTANT: READ THIS NOTICE CAREFULLY. FAILURE TO RESPOND WITHIN THE TIME SET FORTH IN THIS NOTICE WILL LIKELY RESULT IN ADMINISTRATIVE OR JUDICIAL ABATEMENT AND TERMINATION OF USES OF, OR CONDITIONS ON YOUR PROPERTY WHICH THE ENFORCEMENT OFFICIAL CONTENDS ARE IN VIOLATION OF THE YUBA COUNTY ORDINANCE.

SAC, Ex. A., ECF No. 14, p. 3. Green has not provided evidence

or argument that the 221 inspection and abatement warrants issued between 2015 and 2018 were not a result of the recipients' failure to respond to the notice.  The number of abatement warrants issued does not provide a basis upon which Green can assert a Fourth Amendment <u>Monell</u> claim.

The number of appeals and post-deprivation hearings are similarly irrelevant for this claim.  There is no evidence or argument that appeals were sought in more than 35 instances between 2015 and 2018.  Asserting that there were only five post-deprivation hearings does not state a claim that the County had a policy, practice, or custom of exceeding the scope of the judicially-executed warrants.

In sum, Green's listing of data from the Yuba County Code Enforcement website does not provide a basis upon which to assert that the County had a persistent and widespread custom of violating the Fourth Amendment.

2.  <u>Other Lawsuits Against the County for Seizure</u>

Next, Green cites to four state cases and one federal case to establish the County's custom of constitutional violations.  SAC at 9.  As the County argues, these cases are meaningfully distinct, such that they do not form a basis for a Fourth Amendment <u>Monell</u> claim.  Mot. Mem., ECF No. 17-1, p. 5.

In <u>Wyatt, et al. v. Yuba County</u>, Case No. YCSCVCV 17-0703, the plaintiff alleges that the County unlawfully seized 40 marijuana plants and 250 pounds of processed marijuana, worth $375,000, in October 2015.  Mot., Ex. A, ECF No. 17-2, pp. 4-10.  In <u>Lang v. Yuba County</u>, Case No. YCSCCVPT 15-01096, the petitioners sought a writ of mandate to set aside administrative

and abatement costs and penalties resulting from a tenant's
cultivation of 617 marijuana plants in July 2015. Mot., Ex. B,
ECF No. 17-2, pp. 12-51. In Messick v. Yuba County, Case No.
YCSCCVPT 15-0421, the petitioner similarly sought a writ of
mandate to set aside costs and penalties resulting from a
tenant's marijuana cultivation in September 2014. Mot., Ex. C,
ECF No. 17-2, pp. 52-93. In Torres v. Yuba County, Case No.
YSCCVPY 15-0952, the petitioner sought to set aside costs and
penalties resulting from the cultivation of 86 marijuana plants
in June 2015. Mot., Ex. D, ECF No. 17-2, pp. 95-127. Although
the Torres complaint mentions landlord-tenant law, this appears
to be an error caused by the petitioner's counsel reusing
pleadings from Messick. See id. Finally, in Butcher et al v.
City of Marysville et al., Case No. 2:18-cv-02765, the plaintiffs
alleged warrantless seizure of their property during the County's
clearance of homeless encampments from municipal property.

Butcher is meaningfully distinguishable in several ways.
The case involves a class action complaint by homeless
individuals, who were residing on property owned by the City of
Marysville and Yuba County, until the City and County took steps
to remove the plaintiffs and their belongings without securing a
warrant. Butcher v. City of Marysville, No. 218CV02765JAMCKD,
2019 WL 918203, at *1-3 (E.D. Cal. Feb. 25, 2019). It does not
include allegations regarding the proper scope of nuisance
abatement warrants for marijuana cultivation. See id. Butcher
does not support Green's Fourth Amendment Monell claim.

Wyatt, Lang, Messick, and Torres are similarly
distinguishable. Green claims that the cases support his

conclusion that the County has "adopted a custom and practice of violating individuals' rights to be free from unlawful Fifth Amendment takings and Fourth Amendment unreasonable searches," Opp'n at 5; however, this argument is impermissibly broad. To establish a municipal policy, precedent demands "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method" of conduct. Trevino, 99 F.3d at 918.

Wyatt asserted a claim for conversion following the seizure of marijuana from his property, pursuant to a judicially-executed warrant. Ex. A at 7-8. That complaint lacks any allegation that the County violated his constitutional rights by exceeding the scope of the warrant. See id. Lang, Messick, and Torres all petitioned for writs of mandate to relieve them of costs and fines resulting from marijuana cultivation code violations. See Ex. B at 12-51; Ex. C at 52-93; Ex. D at 95-127. Much like Wyatt, these three cases lack any allegations of constitutional violations resulting from the County exceeding the scope of judicially-executed warrants. The state cases do not reveal a persistent and widespread County custom, much less a permanent and well-settled County policy. See Trevino, 99 F.3d at 918.

Accepting all of Green's allegations as true, a reasonable jury could not infer that County has adopted a custom or practice of violating individuals' Fourth Amendment rights by exceeding the scope of nuisance abatement warrants. Cf. Velazquez v. City of Long Beach, 793 F.3d 1010, 1028-29 (9th Cir. 2015). The Court dismisses Green's Fourth Amendment Monell claim.

///

Green's has had several opportunities to amend his <u>Monell</u> claims, yet he has failed to provide sufficient factual allegations upon which to state a claim. The Court finds that granting him further leave to amend his Fourth Amendment <u>Monell</u> claim would be futile and will dismiss this claim with prejudice.

### III. ORDER

For the reasons set forth above, this Court GRANTS Defendants' Motion to Dismiss (ECF No. 17) as follows:

1. GRANTED as to the naming of individual Defendants in their official capacities; and

2. GRANTED as to Plaintiff's Fourth Amendment <u>Monell</u> claims against the County, which is dismissed with prejudice.

IT IS SO ORDERED.

Dated: June 26, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE